Thank you, Your Honor. May it please the Court, in this appeal, UEI requests that the Court reverse the Board's decision finding Claims 1 and 12-16 obvious in view of Gardner, Who, and Dresen. I'm going to make two arguments that are reflected in our briefing. The first one is that the Board's finding that the Gardner, Who combination teaches the limitation a second app installed on the device whereby the advertising content is provided to the second app installed on the device is not supported by substantial evidence. And the second argument is that the Board failed to articulate a motivation to combine or modify Gardner and Who references. I understand that the second app receives the advertising content and then it's going to function to display that as an overlay. Is there anything in your application that tells me why that claim limitation is there? What is the advantage of having to The way I understand it is that what you're doing is you're having kind of like a real-time analysis of what's on the street in the media. But could you point to me something in your application that tells me the benefit gained from this claim? Benefit? Yeah. I mean, I don't, I don't, right. Let me look specifically for that. But as I'm looking, I can kind of tell you what, what we're dealing with here is it's kind of like that real-time. You get, you're getting the media streaming to the, to the display from the media streaming device. And then you're also getting this advertising that's kind of keyed to the media, what's on the display. That's, that's, that's the important thing. It's kind of a real-time. It's looking at what's displayed or it has the knowledge of that through the app and it's able to key certain advertising to what's being shown on the display. Like for example, I guess you're watching baseball and maybe they, they're able to, to, to use, I don't know what, what baseball watchers you, but, but there's certain advertising for a baseball watcher is then overlaid on the, in the baseball game. Probably a beer commercial. Sure. Something like that. So, so, so that's kind of, does that answer your question or no? No. Okay. All right. I wasn't sure. Okay. I was thinking Ted Lasso and biscuits, but anyway, if you, my question is why couldn't it be on, for example, the middleman device with the media streaming device or the network server device? I mean, why does the overlay have to be on the display? Well, I mean, I, I think that's because that's what the user's watching and that's where you, that's where you, you want to send the advertising to. That, that's, that's the way I understand it. Because you're, you're, you're saying that advertising content to the display, it can be a TV or it could be, let's use a TV. It could also be like a handheld phone where you're having the, you know, like a program on the phone. Um, but the point is, as you're watching that, there's this, uh, that's okay. I don't want to, I don't want to believe that. I was just wondering if there was something in the specification that talked about that particular element and that's fine. I will, I will, I was looking for it, but I will, I will find that. Yeah. Um, so, so anyway, um, the, the two, the two main arguments and I'm going to, going to get into those. Um, the, the first argument relates to the, the board's finding, um, and in its, in its decision and, um, it's just, it's just, uh, incorrect. Um, it, it, the, the board completely misreads the claim and doesn't apply the art to the relevant claim limitation. Um, and, and I'm talking about, uh, appendix, um, and, and this is not disputed by the, the, the director, but this is appendix five, um, where the board is discussing, um, the, uh, the examiner's decision and making its own findings based on that. And then, um, you can see that, um, it writes it, it, it thinks that the second app has to be installed with the media streaming device. And the claims are very clear that the second app has to be installed on the second device or the device, which is the device with the display that we've just been discussing. And that's repeated over and over again throughout this page when it makes its finding on whether, um, the Gardner-Hugh combination teaches the second app installed on a media streaming device. It is a little bit unclear, but am I correct that 108 refers to the, um, display device? I think that, that is correct. So the reference numerals correct, the, the parentheticals incorrect. Correct. Um, but that's repeat, I think that's right. Let me just, um, yes, the third device is the device with the second, with the second app. That's what the board is using. Correct. Um, uh, but, but it refers to that as the media streaming device. And obviously the claims to say it has to be the device with the display and that, that it's repeated throughout this, uh, this page. I want to say it says it three or four times. Um, there was no dispute. The board's decision is wrong and should be overturned for that reason, uh, alone. Um, it can't be, it can't support substantial evidence. Why couldn't it be just, uh, common sense on, on the part of the first skill in the art, um, that you can display this on a third device? It's like, hey, let's, let's do three devices now. Well, well, are you saying could we take the claims and then have another device and put advertising content or media content on another device? Um, I mean, I think that is, that is possible. The claims don't require that, but I think that's possible. Are you saying if someone's skill in the art? No, I'm, I'm, I'm responding to the, the, the question of whether Hugh suggests that the overlay model can be on the third device. And I'm just wondering, looking at the degree of suggestion, isn't it just, wouldn't it just make practical sense on the part of a person skilled in the art to try to move this to a third device to get greater advertising, more exposure to what they're doing? Well, to the extent I understand your question, there is a third device discussed in Hugh. Is that, is that, and, and that actually goes to my, to a second argument on this. There's no evidence in the record showing that the, that the, um, that, that what they're saying is the second app could even be installed on this third device. What about paragraph, um, 116, which is the one they seem to rely on? In the, in the board cited, it says the third control unit 652 can execute a third software 666 to provide the intelligence of the content delivery system 100. And if you look at that content delivery system 100, it includes the overlay operation. So, so you're correct. And I was going to get into that. Paragraph 116, I think, I think it's, it's fair that that's really the only paragraph left where that either the director or the board sites to for, for, for this limitation in who and, uh, our position is that doesn't disclose that the, um, that the second app can be installed on, on the third device. I mean, who teaches very clearly, and this is not in dispute that the only two devices, um, that, that, that have, that can be installed, uh, that, that, that the content delivery system 100 can be installed on are, uh, the first and second device. That's very clear. And I think what paragraph 6, 116 says is it has, um, software to provide intelligence of the content delivery system. But I don't read that as saying it can be installed there. I think that's, that's a lot different than saying the, the specific, you know, software of that second app, um, can be installed on the, um, on the third device. I don't, I don't see that. I think they give an example. They say it's like... Do you have expert testimony? Probably not. No, we do not. It's expert, right? We're not. It's just hard because it's a substantial evidence question. I see what you're saying because paragraph one, there's paragraph 116 versus, uh, at the end of the patent around column 13, um, you know, and this is not column 13. Paragraphs 188, 190, 189, 191, and 192 and those on page 1284 suggest that the overlay is just on the first or second device, not the third device. But this language here, is it enough for substantial evidence to support the board's fact-finding? But to be clear, it's not just the, I, you keep saying the overlay, it's the, it's the specific app that needs to be installed on the third device. Uh, it's a specific app that, yes, eventually generates an overlay, but it's the specific app that what it's doing is it's working with the other servers and all that to, to produce the, the advertising content. And, um, it, it's not disputed that in Who, this third device doesn't have, um, doesn't have this, what they're calling the second app. It doesn't have it installed on the third device. That's, that's basically beyond dispute. And so not only is the board's, there's really two arguments on this limitation. The board's decision doesn't make sense, an inconsistent misreading of the claims because of the whole media streaming, um, insertion, uh, and, and it should be reversed for that reason. Secondly, now, if you, if you, if you dig down, you have them saying a second app is installed on the third device in Who and Who is very clear that the, that the content delivery system can only be installed on the, on the first device or the second device. Um, and that is at, uh, appendix 12, 1284 at paragraph 188, 190, 195. Um, so UEI's position is that they can't, uh, the board was unable to show its decision that, um, the limitation is second app installed on the device whereby the advertising content is provided to the second app installed on the, on the device where the displayed device is not supported by substantial evidence. And then the second argument I'd like to get into is that there was no, um, there's no motivation to combine in the board's decision. We, we have Who and we have... 116. Um, 116 does talk about a third software, um, which I think is part of the third device, which is 108, which is the, the, um, the so-called device in the claim, namely in the claim now at issue, the third device. And it says the third software to provide the intelligence of the third device. Um, why does that not, um, include the, um, the software that is the overlay module, not, not the overlay, which is, but the overlay module, which is what produces the overlay. And I think the overlay module is this so-called second app. Uh, I, I touched on this, Judge Strata, before we, we, the, our position is that, that providing intelligence and this additional, uh, software is not the, is not the actual, uh, what they're calling the content delivery system 100. It's, um, which they're referring to as the second app. That, that's, it's completely different. Um, and that is, it's very clear that is only installed on the first device 102 or the second device 106. It's not installed on the third device. One thing you said before, as you said, there's no software that's executed, but this clearly does, as Judge Toronto suggested, it says execute, it can execute a third software 666 to provide the intelligence. I agree that there is software that's executed, just not what they're referring to as the software, uh, or the app, the second app. It's completely, it's different. I'm sorry. So, so, um, the intelligence of the content delivery system 100. So there are two pieces to that. And I guess I'd like you to clarify what does who define as a content delivery system? Is that, um, software? Is it a collection of software? Is it the entire system, which includes the various devices and the software, and then maybe second, what is the intelligence of this system? I, so I believe the content delivery system is, is the system, the software that you use to send specific media content. Uh, that, that's my understanding. And I think the intelligence would be maybe right. So can you help me see what the basis is for your understanding of a, of a content delivery system? Well, yes, there are several pieces here. This 116 is, is I think, um, obviously central to, to this. And so if we're trying to figure out, um, whether this supplies substantial evidence for the board's conclusion, um, I at least would like to understand this crucial sentence better than I currently do. Okay. Uh, the, the content delivery system is software that, that, uh, that, that is used to, just to send content to the, to a display. Uh, it is not, and there's no dispute that it is not on the third device. I don't think there's, it is only that who only teaches it being on the, the first device and the second device, um, and providing... Right. So, so I guess the trouble I'm having with that, um, phraseology, which you've used a couple of times is that, um, perhaps aside from 116, individual embodiments described in WHO don't put this particular piece of the intelligence on the third device, but maybe 116 does. And if all you're saying is that the rest of WHO doesn't, um, uh, I, I'm kind of not interested in that unless you can tell me why 116 doesn't. So, so if you look at paragraph 134 of appendix 1279, that goes, that goes into, um, the third control unit and the third software that was and talks about receiving location information, interacting with the communication path. Uh, but, but that's, that, that, that is really the way I interpret the providing intelligence of the content delivery system, not actually giving you all of the software that's required by the content delivery system. I have to be honest with you, your explanation you just gave referring to paragraph 134, I'm not following why what you said is compelled by paragraph 134. So you might want to go into more detail. Okay. So I, I mean, I, I think the way I read this, you have to piece it up to 116, what we talked about, but, um, 116 talks about the third device at appendix 1278 and then a third control unit. And it goes in and it talks about all these different, um, all the requirements of the third device and the third control unit. And then, and then I'm taking that and I'm going to 134 and I'm, uh, at 1279 and then I'm, I'm reading, well, what is this third control unit really doing? Um, and it says it can operate the third user interface to display information generated by the content delivery system. So it's, it's clear that it's like, it's. But what about the next sentence? Third control unit 652 can also execute the third software 666 for the other functions of the content delivery system. Right. But the, the, the 666, which was, was, was just a limited, um, that was a, uh, that's a sub component. It's a separate component from what we're talking about is the actual, um, the content delivery system. And that actually makes it clear. Paragraph 116 says that third software 666 can provide the intelligence of the content delivery system 100. Right. But I think both of those paragraphs make clear that they're, the content delivery system is not on the third control device. It's, it's, it's separate. Um, the way that, the way they discuss it. And I think that's, that, that's one, our point that it's, it's somewhere else. Okay. You're out of time. Thank you. Good morning, your honors. May it please the court. Um, the 75 claims recite a method by which a first app on a media streaming device sends advertising content to a second app on a display device. The second app then functioning to display the advertising content as an overlay at the display device. Could you speak just a little louder for me? Yeah. Um, first off, I want to respond to two quick points. Uh, first, I think Judge Stoll, you asked as to whether the specification described specific benefits of putting the overlay or the second app or the overlay module on the display device. And I'm not aware of anything in the specification describing a benefit of that particular setup as opposed to other setups. Um, and I think, so from there I want to get to, I guess, two arguments. First, I want to talk about, um, counsel's arguments with respect to paragraph 116 of HUE. And so paragraph 116 of HUE states that, um, the software that's running on the third device, 108, can execute, uh, can provide the that content delivery system 100 itself includes the overlay module 722. So paragraph 158 in HUE. Do you get that from, uh, figure 7 or something else? So, um, figure 7 shows it also, but I think in terms of the description itself, paragraph 158 in HUE. Did you say 158? Yeah, 158, yes. Appendix 1281 states that the content delivery system can include the content module 716. And then paragraph 163 states that content module 716 can include the overlay module 722. And so there's no dispute, I don't think that that content delivery system 100 can include the overlay module 722. I also want to respond to the point that, um, that the director somehow concedes that that content delivery system 100 can't be installed on the third device. I think that's just wrong. I think the examiner laid it out pretty clearly in the examiner's answer on appendix 1026. What? Oh, 1026. There the examiner relies on the second full paragraph as, uh, referring to paragraph 116 in HUE as illustrating that all of content delivery system 100 can be installed on third device 108. And the examiner further explains here that HUE also teaches that third device 108 can be included in public device 204, which is the display device. A couple of other points I want to respond to pretty quick. Paragraph 134 in HUE, uh, council cites that as an indication of what, uh, like certain examples as to what the intelligence of content delivery system 100 can include. But I think as Judge Stoll has pointed out, that paragraph is not limiting, and I think it actually supports the director's argument. That paragraph specifically states that the software that's running on third device 108, uh, can provide the other functions of content delivery system 100. And what follows are just examples of what those functions are, but it's not, it's not exclusive. It doesn't say that it cannot provide overlay functionality. What about the fact that, like, paragraphs 188, 189, 191, 195, they say, oh, that, um, the content delivery system can be on the, what is it, first device, and then it says it can be on the second device. Then it says it can be split between the first and second device, and nowhere in this part of the application does it refer to the third device. What, what should be understood from that? Well, Your Honor, uh, we think that the court should not infer some sort of, like, purposeful omission from that, that passage in here does not describe third device 108 at all. So it's not a situation where it's describing third device 108, and it left out that sentence. And second, I think that it made sense in that passage not to describe third device 108, because in different passages in, and we explained them in our brief, third device 108 is often described as being, like, interchangeably with first device 102. And so there's no real reason to repeat the description with respect to first device 102, um, for third device 108 at that, in that passage. But either way, we, these, like, paragraphs 188 to 195 should outweigh the explicit teachings in paragraphs 116 and 134. I also wanted to, um, touch on the argument that the Board, um, misread or, um, misunderstood the claims. So we, we disagree with, uh, opposing counsel that the Board necessarily misunderstood the claims. We think that the, the, the dispute that was presented before the Board was factual. It had nothing to do with the scope of the claims. It was two factual disputes with respect to Gardner and Hugh. The Board expressly resolved both those factual disputes and based this decision on its resolution of those disputes. And I think critically, the, the Board found that the exam, the examiner's findings, and I'm on appendix five here, the examiner's findings with respect to Hugh teaching the placement overlay module 722 on device 108 are supported by the settings teaching with Hugh. The, the Board did not expressly consider whether the prior teaches or suggests installing overlay module 722 on Gardner's device 102, which is what the examiner had mapped to the media streaming device, which is what the Board would have done had they understood the claims as the appellant says they did. Nor did the Board expressly consider whether Hugh teaches or suggests installing overlay module 722 on a device that streams content to public device 204 or third device 108, which again, that's what the Board would have done had the Board understood the claims as the appellant says they did. Can I just double check something? Do you agree that the, the two IE parentheticals in this, the last full sentence at the bottom of appendix five are, are wrong? No, Your Honor. I wouldn't say the first one is. Because the overlay module 722 is teaching a second app. Oh, that's the second app. Okay. Not the third. Okay. But the second, the second, the 108 is the public device and not, or the third device, not the media streaming device. That's correct. Yeah. It's, it's essentially, it's the display device, not the media streaming device. And unless the Court has further questions on that point, I want to quickly respond to the point about motivation to combine. Appellant had numerous opportunities to challenge motivation to combine before the examiner. And not having done so, we think that the appellant forfeited that argument before the Board and failed to preserve it for review here. And to the extent that the Board nonetheless considers that argument, we think that under Rule 4150A1, the Board's decision should be understood as incorporating the examiner's motivation to combine. Unless the Court has any further questions. No. I will see you in my time. Thank you. Thank you very much. We'll go back to three minutes. I just want to briefly touch on who disclosing who's third control device. I think it's very clear from who at 1284 at paragraphs 188, 191, and 185 that the, that only the first device and the second device have the content delivery system installed on them. And I also think because, and then I wanted to touch on the Board's decision. And I, I mean, I'm happy that the Director's now agrees that the decision is incorrect. But this Court reviews the Board's decision and the Board's decision does not support that the claims are in balance, not supported by substantial evidence, with all, with all of the mistakes included in it. And I think that's a, that's a separate and to be overturned. Regarding the motivation to combine, the Board's decision doesn't include any motivation to combine whatsoever. And we're talking about a combination between Gardner and, and who, and that's at appendix one through six. You can see at the end, there's no discussion about it. The Board only talks about the teachers suggested, or suggested. This issue was raised before the Board in appendix 941, appendix 100, 1006, appendix 1007, appendix 1008, where the, where UEI said that the Board had not, the examiner had not shown a motivation to combine who and Gardner. And we would, our position is that because the Board's decision doesn't articulate a motivation to combine, it's not supported by substantial evidence for that reason also. Any further questions? Thank you, Your Honor.